```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
Gelfman International Enterprises,
Inc.,                                          CV-05-3826(CPS)

                Plaintiff,

        -against-                              MEMORANDUM
                                               OPINION AND ORDER
Marta Klioner, Miami Sun International
Corp., Gleb Klioner, Michael Touretsky,
and the Choir of Michael Touretsky

                Defendants.
----------------------------------X
```
SIFTON, Senior Judge.

Plaintiff, Gelfman International Enterprises ("Gelfman International"), commenced this action by filing a complaint invoking this Court's diversity jurisdiction against defendants, Marta Klioner, Miami Sun International Corp. ("Miami Sun"), Gleb Klioner, Michael Touretsky, and the Choir of Michael Touretsky a/k/a Moscow Jewish Choir ("Choir") ("defendants"). The complaint sets forth claims for relief based on breach of contract, misrepresentation and fraud,[1] and conversion. Defendants move for a change of venue pursuant to 28 U.S.C. §1404(a) and to dismiss count one of the complaint as to defendants Gleb Klioner, Touretsky and the Choir and counts two and three of the complaint as to all defendants pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below the defendants' motion for a change of venue is denied and the defendants' motion to

---

[1] Plaintiff identifies this claim as "misrepresentation and fraud" but its papers make clear that they mean to plead a claim of fraudulent misrepresentation.

dismiss is granted.

BACKGROUND

The following facts are drawn from the complaint, and are viewed in the light most favorable to Gelfman International, the non-moving party. *See Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002).

The Parties

Plaintiff, Gelfman International is a Maryland corporation with its principal place of business in King's County, New York.

The defendant Marta Klioner, is a resident of Florida.[2]

The defendant Miami Sun is a Florida corporation with its principal place of business in Florida. Miami Sun is owned and

---

[2] Although neither party has raised the issue, a federal court is required to *sua sponte* dismiss a complaint that does not properly plead subject matter jurisdiction. *E.g., Held v. Held*, 137 F.3d 998 (7th Cir. 1998). Because the claims for relief alleged in the complaint are creatures of state law, jurisdiction must be founded on diversity of citizenship. *See* 28 U.S.C. § 1332. Federal Rule of Civil Procedure 8(a)(1) requires a plaintiff to allege in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." For purposes of diversity jurisdiction, this requires alleging the states of citizenship of all parties. *Held*, 137 F.3d at 1000. Here, however, the plaintiff has merely alleged Marta Klioner's place of *residency.*
   Allegations concerning a party's place of residence are insufficient to establish diversity of citizenship because a person may be a resident of one state but a citizen of another. *Held*, 137 F.3d at 1000; *Nadler v. Am. Motor Sales Corp.*, 764 F.2d 409, 412-13 (5th Cir. 1985); *Kaiser v. Loomis*, 391 F.2d 1007 (6th Cir. 1968); *Automotive Fin. Corp. v. Automax of Northern Il.*, 194 F. Supp. 2d 796 (N.D. Ill. 2002); *Edick v. Poznanski*, 6 F. Supp. 2d 666, 669 (W.D. Mich. 1998); *Brower v. Franklin Nat'l Bank*, 311 F. Supp. 675, 676 (S.D.N.Y. 1970). This is so because "citizenship" for purposes of the diversity statute is synonymous with "domicile," not residence. *Kaiser*, 391 F.2d at 1009.
   Further, as discussed below, plaintiff has failed to allege either residency or citizenship for defendant Michael Touretsky. Accordingly, the plaintiff is instructed that if the complaint is not amended in its entirety on or before March 9, 2006, to plead the relevant parties states of citizenship, it will be dismissed.

operated by Marta Klioner. Marta Klioner is also one of Miami Sun's officers.

The defendant Gleb Klioner is a manager and employee of Miami Sun.

The defendant Choir is a foreign business existing under the laws of the country of Russia.

The defendant Michael Touretsky is the producer of the Choir.

The Contract

Gelfman International has been in the business of promoting and planning entertainment events around the world for the last fifteen years. Marta Klioner had previously worked with Gelfman International to plan events. In June of 2004 Marta Klioner spoke with Gelfman International about planning entertainment events in the United States. Marta Klioner represented that she was the representative and agent of Touretsky and the Choir and that they wished to secure the services of Gelfman International to plan a promote and series of choir performances.

Gelfman International proposed a series of performances in five cities: San Francisco, Los Angeles, Chicago, Boston and Atlantic City (collectively, the "Tour"). Klioner told Gelfman International that Touretsky and the Choir agreed to the proposal. Proceeds from the tour, meaning total box office receipts, would be divided as follows: initially all tour

expenses would be reimbursed to the party that had incurred them; the balance remaining, the "net" proceeds would be divided equally with Gelfman International receiving fifty percent and the defendants receiving fifty percent.

Thereafter, Gelfman International began coordinating the Tour, which was scheduled to take place between January 22, 2005 and January 29, 2005. During the planning and promotion of the tour, Gelfman International expended significant funds in the form of costs for advertising, equipment, lighting and transportation and lodging for Touretsky and the Choir.

Marta and Gleb Klioner and Miami Sun acted as exclusive representatives of Touretsky and the Choir during the Tour. During the Tour, the Klioners and Sun Miami withheld information from the plaintiff about various aspects of the concerts. For example, they attempted to prevent Gelfman International employees from appearing at the concerts and from having access to the concert gate information. Employees of Gelfman International did appear at the final Atlantic City concert in order to obtain information concerning all of the performances, but the Klioners failed to meet with them. Touretsky and the Choir left the performance without meeting or speaking with the plaintiff.

After the Tour was completed, the defendants took possession of all of the receipts, information, and profits from the shows,

thus preventing plaintiff's gaining access to them. Instead, the defendants divided profits from the concerts among themselves without reimbursing Gelfman International for monies expended or for its share of the profits.

On August 11, 2005 plaintiff filed the complaint in this case. Thereafter, defendants hired the Florida law firm, Glantz & Glantz, P.A. to represent them and that firm has appeared for all defendants.[3]

## DISCUSSION

Change of Venue

Defendants request that this action be transferred to the Southern District of Florida, Miami division.

Section 1404(a) of title 28 of the United States Code provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." It is undisputed that this action could have been brought in the Southern District of Florida.

Courts considering a motion for a change of venue consider the following factors: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to

---

[3] The identity and location of defendants' counsel is a fact not drawn from the complaint, but rather from the submission of the defendants' in connection with their motion for a change of venue. It is mentioned here, only because defendants cite it as an argument in support of their motion for a change of venue to Florida. By order dated October 27, 2005 I granted Florida Counsel's motion to appear *pro hac vice* in this matter.

sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.
*Lewis v. CRI, Inc.*, 2003 WL 1900859, *2 (S.D.N.Y. 2003). The court has broad discretion to balance these factors and to consider the evidence of convenience and fairness on a case-by-case basis. *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992), citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

A defendant seeking a change of venue must demonstrate through "clear and convincing evidence 'that the balance of convenience favors the defendant's choice.'" *Walker v. The Jon Renau Collection, Inc.*, 2005 WL 3147863 (S.D.N.Y. 2005)(quoting *Hall v. South Orange*, 89 F.Supp.2d 488, 494 (S.D.N.Y. 1999)(citations omitted)).

*Witnesses*

"The convenience of both party and non-party witnesses is . . . considered the single most important factor in the analysis." *Aerotel Ltd. v. Sprint Corp.*, 100 F.Supp.2d 189, 197 (S.D.N.Y. 2000). In order to allow the court to make this determination, a

movant "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Oubre v. Clinical Supplies Management, Inc.*, 2005 WL 3077654, *2 (S.D.N.Y. 2005)(quoting *Factors Etc., Inc. v. Pro Arts Inc.*, 579 F.2d 215, 218 (2d Cir. 1978).

Defendants here do not specify who the key witnesses to be called will be, or what their testimony will cover. To the extent that the parties themselves will be the key witnesses in this case, venue in New York would on the face of it be more convenient to any plaintiff party witnesses while venue in Florida may be more convenient to Floridian defendant party-witnesses. Venue in either location will be inconvenient for the Russian defendant party-witnesses and accordingly, their convenience is not considered in the venue transfer analysis.[4] *Varsity Spirit v. I.I.P. Inc.*, 2003 WL 22772638, *2 (S.D.N.Y. 2003)(convenience of the witnesses who do not reside in either proposed forum does not significantly alter the transfer analysis). Accordingly, convenience does not favor Florida over New York.

*Documents and Sources of Proof*

Defendants argue that to the extent any money was directed

---

[4] As discussed below, I have dismissed all counts against the Russian defendants, so their convenience need not be considered at all. However, since I have also allowed plaintiff leave to amend the complaint such claims might be reinstated against the Russian defendants. Accordingly, I include them in the venue discussion.

by the Klioners to Miami Sun accounts all relevant records are located in Florida. However, "'[i]n today's era of photocopying, fax machines, Federal express,' and electronic document transmission, the location of documents is entitled to little weight unless the movant makes a detailed showing of the burden it would incur absent the transfer." *Oubre*, 2005 WL 3077654 at *3 (quoting *Coker v. Bank of Am.*, 984 F.Supp. 757, 766 (S.D.N.Y. 1997)). Defendants have made no such showing. Nor have defendants demonstrated that any other source of proof is more easily accessible in Florida than in New York. Indeed, in a contract dispute such as this one, it is unlikely that there will be any sources of proof other than witness testimony and documentary evidence. This factor is therefore neutral.

*Convenience of the Parties*

On the face of it litigation of this suit is more convenient for the plaintiff in New York, since the plaintiff is located here. Litigation similarly appears more convenient for the Klioners and Miami Sun in Florida since they are located in Florida. Touretsky and the Choir will have to travel to the United States no matter which venue is selected. However, because Touretsky and the Choir have Florida counsel,[5] they argue that if

---

[5] Plaintiff's argue, without support, that Touretsky and the Choir chose Florida counsel in order to have venue transferred to Florida. It seems more likely that as defendants have chosen to be represented collectively by a single law firm, and since the only American defendants are located in Florida, Floridian counsel was chosen as a matter of convenience.

the case is litigated in New York they will have to travel to Florida to meet with counsel and then to New York to be present at the litigation. It seems more likely that to the extent defendants wish to meet with counsel far in advance of a court appearance, Touretsky and Choir will fly from Russia to Florida without coming to New York. To the extent meetings with counsel occur contemporaneously with a court appearance, there is no reason that Touretsky and Choir cannot meet counsel in New York. However, assuming that Touretsky and Choir did find it necessary to fly first to Florida and then to New York, that would weigh slightly in favor of venue in Florida.

*Locus of Operative Facts*

In determining the locus of operative facts, courts look to the "site of the events from which the claim arises." *800 Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 134 (S.D.N.Y. 1999). Contract disputes arise, "where the contract was negotiated or executed, where it was to be performed, [and] where the alleged breach occurred." *Prudential Sec., Inc. v. Norcom Development Inc.,* 1998 WL 397889, *4 (S.D.N.Y. 1998). The parties created this contract over the telephone, thus the contract cannot be said to have been created in one particular venue. Plaintiff now states that defendants also personally came to New York to meet with the plaintiff. To the extent defendants breached the contract by withholding information at the tour

locations, such breach occurred in San Francisco, Los Angeles, Chicago, Boston and Atlantic City, none of them possible venue locations. To the extent the breach occurred when defendants deposited funds owed to plaintiff in a Florida bank, the locus of operative facts is in Florida. Balancing the meetings in New York against the deposits in Florida, the locus of operative facts inquiry is neutral.

*Availability of Process to Compel Attendance of Unwilling Witnesses*

A party relying on this factor must show that non-party witnesses are unwilling to testify at trial. *Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 562 (S.D.N.Y. 2000). Defendants have not indicated that there are any unwilling witnesses. Accordingly, this factor is neutral.

*Relative Means of the Parties*

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *USA Interactive v. Savannah Air Ctr., LLC,* 2002 WL 1808236, *2 (S.D.N.Y. 2002). Defendants have made no allegations that they lack the means to defend this case if it is litigated in New York. The Floridian defendants are a corporation and its officers/employees. The plaintiff is also a corporation. The Russian defendants will have

similar travel expenses whether the case is litigated in New York or in Florida. Accordingly, this factor is neutral.

*Forums Familiarity With Governing Law*

Defendants make no argument concerning what law governs this case, although their motion to dismiss cites exclusively to New York cases. Such "implied consent ... is sufficient to establish choice of law." *Motorola Credit Corp. v. Uzan,* 388 F.3d 39, 61 (2d Cir. 2004). Since New York law governs this case, this forum is the most familiar with the governing law.[6]

*Plaintiff's Choice of Forum*

On a motion to transfer venue a plaintiff's choice of forum will not be disturbed unless the movant makes a clear and convincing showing that the balance of convenience favors an alternate forum. *Hubbell v. Pass & Seymour, Inc.,* 883 F.Supp.955, 962 (S.D.N.Y. 1992). The plaintiff chose to file this case in New York. Therefore, plaintiff's choice of forum weighs heavily against transfer.

*Trial Efficiency and the Interests of Justice*

Defendant has offered no argument that this case will be more efficiently tried in Florida. There is no indication that the Florida district courts are any less busy than those of the Eastern District of New York. Nor has the defendant shown any

---

[6] Even if Florida law controlled, familiarity with the governing law is generally given little weight in considering motions to change venue in federal court. *AEC One Stop Group, Inc., v. CD Listening Bar, Inc.,* 326 F.Supp.2d 525, 531 (S.D.N.Y. 2004).

reason why the interests of justice demand that the case be tried in Florida

Balancing all of the above factors, defendants' sole argument in favor of a transfer of venue is that the Klioners and Miami Sun are located in Florida and that suit in New York would arguably force Touretsky and Choir to travel to Florida and to New York as opposed to traveling just to Florida. Because of the weight given to a plaintiff's choice of forum, defendant's arguments do not establish by clear and convincing evidence that another forum would be more convenient. "A transfer should not merely shift the burden of inconvenience from one party to the other." *Dwyer v. General Motors Corp.,* 853 F.Supp 690, 693 (S.D.N.Y. 1994). Where, as here, it is no more inconvenient for the defendants to travel to this forum than for the plaintiff to travel to the defendants' requested forum, no change of venue is appropriate.

<u>Motion to Dismiss</u>

Defendants' motion requests that count one of the complaint, alleging breach of contract, be dismissed as to defendants Gleb Klioner, Touretsky, and the Choir and that counts two and three, alleging fraudulent misrepresentation and conversion, be dismissed in their entirety. In considering a motion pursuant to Rule 12(b)(6), a court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and

drawing all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)(citing *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001)). However, "[i]n order to avoid dismissal, plaintiffs must do more than plead mere "conclusory allegations or legal conclusions masquerading as factual conclusions." *Endovasc Ltd., Inc. v. J.P. Turner & Co., LLC,* 2004 WL 634171, *3(S.D.N.Y. 2004)(citations omitted); *First Nationwide Bank v. Helt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. V. Town of Darien*, 56 F.3d 375,378 (2d Cir. 1995). Dismissal is appropriate only when it "appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80,83 (2d Cir. 2000). Additionally, a complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) if the Court finds that the plaintiff's claims are barred as a matter of law. *Conopco, Inc. v. Roll Intern.*, 231 F.3d 82, 86 (2d Cir. 2000).

<u>Count One, Breach of Contract</u>

In order to succeed on a breach of contract claim under New York law, a plaintiff must demonstrate: (1) the existence of a valid agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4)

damages. *Harsco Corp., v. Segui*, 91 F.3d 337, 348 (2d Cir. 1998).

Defendants argue that the breach of contract claims against Gleb Klioner, Touretsky and the Choir must be dismissed because plaintiff has not adequately alleged that they were parties to the contract.[7]

The complaint alleges that, "the plaintiff, GELFMAN INTERNATIONAL and the defendants, MIAMI SUN, KLIONER, GLEB KLIONER, TOURETSKY and the TOURETSKY CHOIR, had entered into an agreement whereby the plaintiff was required to schedule, coordinate, plan and promote the TOUR." Complt. ¶32. However, this conclusory allegation that Gleb Klioner was individually party to the contract is unsupported by any other factual allegation. Plaintiff does not allege that Gleb Klioner ever spoke to plaintiff about the contract, or that he was anything other than an employee of Miami Sun. Such conclusory allegations are insufficient to withstand a motion to dismiss. *Endovasc Ltd.*, 2004 WL 634171 at *3.[8]

Plaintiff argues that Touretsky and the Choir are parties to

---

[7] It is undisputed that plaintiff has adequately alleged performance, breach and damages.

[8] Plaintiff's conclusory allegation that Touretsky and the Choir were parties to the contract is equally insufficient. Moreover, it is clear that Touretsky and the Choir did not enter into the contract since the complaint also states that "KLIONER, [Marta], GLEB KLIONER AND SUN MIAMI had exclusive control over and contact with TOURETSKY and TOURETSKY CHOIR." Cmplt. ¶43. Rather, plaintiff alleges that Touretsky and the Choir were party to the agreement either because the Klioners and Miami Sun had apparent authority to bind Touretsky and the Choir, or because Touretsky and the Choir ratified the contract later. These arguments are addressed below.

the contract because they were bound by their agents, the Klioners and Miami Sun. Plaintiff contends that the Klioners and Miami Sun were agents for Touretsky and the Choir because they had the apparent authority to act for Touretsky and the Choir. Plaintiff argues that such apparent authority was created because Marta Klioner told plaintiff that Touretsky and the Choir wanted to secure the services of plaintiff and because plaintiff had previously worked with Klioner and accordingly had reason to believe any representations made by her.

Apparent authority arises from "words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction." *Fennel v. TLB Kent Co.,* 865 F.2d 498, 503 (2d Cir.1989) (*quoting Hallock v. State,* 485 N.Y.S.2d 510, 513 (1984)). However, "[t]he existence of the apparent authority must be 'traceable' to the principal, and cannot be established by the unauthorized acts, representations, or conduct of the agent." *In the Matter of the Arbitration between Herlofsen Management A/S and Ministry of Supply, Kingdom of Jordon,* 765 F.Supp 78, 88 (S.D.N.Y. 1991). Here plaintiff has made no allegation that it had any contact whatsoever with the principal. Accordingly, no apparent agency can have been created. Marta Klioner's statements and plaintiff's prior familiarity with her are insufficient.

Plaintiff also contends that even if the Klioners and Miami

Sun were not agents for Touretsky and the Choir that Touretsky and the Choir became bound by the contract when they ratified the Klioners and Miami Sun's actions by participating in the Tour. "Ratification is the express or implied adoption of acts of another by one for whom the other assumes to be acting but without authority." *Prisco v. New York,* 804 F.Supp. 518, 523 (S.D.N.Y.1992). These acts are "given effect as if originally authorized by [the principal]." Restatement (Second) of Agency § 82 (1958). "Ratification may be express, as by spoken or written words, or it may be implied from any act, words, or course of conduct on the part of the principal which reasonably tend to show an intention to ratify the unauthorized ... act." *Capital Dist. Physician's Health Plan v. O'Higgins,* 951 F.Supp. 352, 361 (N.D.N.Y.1997). Where the principal knows of an unauthorized act taken on his behalf and remains silent, he is deemed to have ratified the act. *Velez v. Vassallo,* 203 F.Supp.2d 312, 322 (S.D.N.Y. 2002) (*citing C.E. Towers Co. v. Trinidad & Tobago Airways Corp.,* 903 F.Supp. 515, 526 (S.D.N.Y. 1995)). "When an act is done without authority, under an assumed agency, it is the duty of the principal to disavow and repudiate it in a reasonable time after information of the transaction if he would avoid responsibility thereof." *Id.*

However, while defendants Touretsky and Choir may have retained the benefits of plaintiff's efforts, plaintiff has not

asserted any fact which would suggest that Touretsky or the Choir were aware of plaintiff's role in planning the Tour. A principal does not ratify the act of a purported agent where the principal benefits from the act but is unaware of the source of such benefit. *See e.g. Philips v. Mackellar,* 92 NY 39 (1883)(holding that where a principal received interest from a usurious loan made by an agent, but was unaware that the interest came from such a loan the principal had not ratified the agents acts). Rather, the principal must have knowledge of all "material facts" in order to be deemed to have ratified the at of the agent. *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,* 850 F.Supp. 1199, 1213 (S.D.N.Y. 1994); *see also Chemical Bank v. Affiliated FM Ins. Co.,* 196 F.3d 373, 375-76 (2d Cir.1999), *cert. denied,* 531 U.S. 1074, 121 S.Ct. 767, 148 L.Ed.2d 667 (2001). Because there is no evidence or allegation that Touretsky and the Choir knew of the contract, they cannot be deemed to have ratified it.

Count Two, Fraud and Misrepresentation

A fraud claim consists of five elements: 1) a representation of material fact; 2) that was false; 3) scienter; 4) reliance by the plaintiff; and 5) injury. *Dallas Aerospace Inc., v. CIS Air Corp.*, 352 F.3d 775, 784 (2d Cir. 2003); *Vermeer Owners, Inc. v. Guterman,* 78 N.Y.2d 1114, 578 N.Y.S.2d 128, 585 N.E.2d 377, 378-

79 (N.Y.1991); *Giffune v. Kavanagh,* 302 A.D.2d 878, 753 N.Y.S.2d 784, 784 (N.Y.App.Div.2003).

Plaintiff has alleged that defendants promised to repay any expenses expended by plaintiff in promoting and organizing the tour and to split any profits with the plaintiff, but that defendant never intended to fulfill this contract.

However, mere intent not to perform on a contractual agreement, without more, does not give rise to a fraudulent misrepresentation claim. *TVT Records v. Island Def Jam Music Group,* 412 F.3d 82, 91 (2d Cir. 2005)(quoting *Bridgestone/Firestone Inc., v. Recovery Credit Services Inc.*, 98 F.3d 13(2d Cir. 1996)(citations omitted)). A false statement by a defendant that he intends to perform on a contract gives rise to a fraudulent misrepresentation claim separate from a breach of contract claim only when one of three conditions is met: "(1) the defendant owes a legal duty to the plaintiff separate from the duty to perform under the contract; (2) the defendant makes a fraudulent misrepresentation that is collateral or extraneous to the alleged contract; or (3) the plaintiff seeks special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Zinter Handling, Inc. v. General Elec. Co.,* 2005 WL 1843282, *7 (N.D.N.Y. 2005). Plaintiff has not alleged any facts which would support any of the three exceptions referenced above.

Count Three, Conversion

Conversion is "an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights. *Employers' Fire Ins. Co. v. Cotten,* 245 N.Y. 102, 105, 156 N.E. 629 (1927) (citing *Laverty v. Snethen,* 68 N.Y. 522, 524 (N.Y.1877)). *See also Melnick v. Kukla,* 228 A.D. 321, 239 N.Y.S. 16, 18 (N.Y.App.Div.1930); *Meese v. Miller,* 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 (N.Y.App.Div.1981). "The test for conversion is whether a party exercises dominion or actually interferes with the property to the exclusion or in defiance of the plaintiff's rights." *Meese v. Miller,* 436 N.Y.S.2d at 500 (citations omitted).

New York law recognizes an action for conversion of money, but requires the plaintiff to have "ownership, possession or control of the money" before its conversion. *Traffix, Inc. v. Herold,* 269 F.Supp.2d 223, 228 (S.D.N.Y. 2003)(quoting *Aramony v. United Way of America,* 949 F.Supp. 1080, 1086 (S.D.N.Y.1996)). Proof of a mere breach of contractual obligation is insufficient. *Borumand v. Assar,* 2005 WL 741786, *9 (W.D.N.Y. 2005)(citing *Hutchings v. Torrey,* 203 Misc. 1038, 119 N.Y.S.2d 119 (N.Y.Sup.Ct.1953)(failure to repay a loan constitutes a breach of contract and does not amount to conversion). *See also United Republic Ins. Co. v. Chase Manhattan Bank,* 168 F.Supp.2d 8, 19 (N.D.N.Y. 2001) ("Conversion is not a valid claim for an

enforcement of an obligation to pay money, or for the enforcement of a bargain"). In the present case, plaintiff does not allege that it ever had possession of the funds to which plaintiff now claims to be entitled. Rather, plaintiff's entitlement to these funds derives only from defendants' contractual obligation to plaintiff.

## CONCLUSION

For the reasons set forth above, defendants' motion for a change of venue is denied. Defendant's motion to dismiss count one of the complaint as against Gleb Klioner, Touretsky and the Choir and counts two and three in their entirety is granted. Plaintiff is granted leave to amend within thirty days of the date of this decision if it can do so within the strictures of Rule 11 of the Federal Rules of Civil Procedure.

The clerk is directed to furnish a copy of the within to the parties and to the Magistrate Judge.

SO ORDERED.

Dated :   Brooklyn, New York

February 8, 2006

By:   /s/ Charles P. Sifton (electronically signed)
      United States District Judge