UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X

Gelfman International Enterprises,

                         Plaintiff,          05-CV-3826 (CPS)(RML)

     -against-
                                             MEMORANDUM
Miami Sun International Corp., Marta          OPINION
Klioner, and Gleb Klioner,                   AND ORDER

                         Defendants.

-------------------------------------X
SIFTON, Senior Judge.


     Plaintiff, Gelfman International Enterprises ("Gelfman

International"), commenced this action against defendants Miami

Sun International Corp. ("Miami Sun"), Gleb Klioner, Marta

Klioner, Michael Touretsky ("Touretsky"), and the Choir of

Michael Touretsky a/k/a Moscow Jewish Choir (the "Choir")

(collectively, "defendants") on August 11, 2005. The amended

complaint sets forth claims for relief based on breach of

contract, quantum meruit, promissory estoppel, unjust enrichment

and for an accounting of the monies in contention. Now before

this court are (1) a motion for summary judgment by defendants

Marta Klioner, Gleb Klioner and Miami Sun; (2) a motion to file

an amended answer by defendants Marta Klioner, Gleb Klioner and

Miami Sun; (3) plaintiff's motion to file a second amended

complaint; (4) a motion for summary judgment by defendants

Michael Touretsky and the Choir; and (5) a motion for sanctions

pursuant to Rule 11 against the plaintiff and plaintiff's counsel

by defendants Michael Touretsky and the Choir. For the reasons set forth below, the motions by defendants Marta Klioner, Gleb Klioner, and Miami Sun to amend their answer and for summary judgment are granted. The motion by defendants Touretsky and the Choir for summary judgment is granted. The motion by Touretsky and the Choir for Rule 11 sanctions is granted against plaintiffs' counsel and denied against plaintiffs. The motion by plaintiff for leave to file a second amended complaint is granted.

## BACKGROUND

The following facts are taken from the Amended Complaint, the parties' affidavits and the exhibits attached thereto, and defendants' Local Rule 56.1 statements of undisputed facts.[1]

*1. The Parties*

Gelfman International is owned and operated by Mark Gelfman, and is managed by Aliki Gelfman. Gelfman International was incorporated in Maryland with its principal place of business in King's County, New York. On October 7, 2002, Gelfman

---

[1] Each motion for summary judgment was accompanied by a Local Rule 56.1 Statement of undisputed facts. Defendants Miami Sun, Marta Klioner and Gleb Klioner submitted a 56.1 Statement ("Klioner 56.1 Stmt.") in support of their motion for summary judgment and defendants Michael Touretsky and the Choir submitted a 56.1 Statement ("Touretsky 56.1 Stmt.") in support of their motion for summary judgment. Because plaintiff has not submitted a corresponding Local Rule 56.1 statement, in accordance with Local Rule 56.1(c), defendants' Local Rule 56.1 Statements are deemed admitted for the purposes of this motion to the extent the allegations of fact recited therein are supported by the record. *Larsen v. JBC Legal Group, P.C.*, 533 F.Supp.2d 290, 295 (E.D.N.Y. 2008). Disputes are noted.

International forfeited its corporate charter to the Department of Assets and Taxation of the State of Maryland, for failure to file a property return for 2001.[2] Affidavit of Oscar Michelen, January 2, 2009, Ex. I (Certificate from the Maryland Department of Assessment and Taxation). As of June 3, 2009, Gelfman International remained in forfeiture with the State of Maryland.[3]

Defendants Marta Klioner and Gleb Klioner are citizens of Florida.

Defendant Miami Sun is a Florida corporation with its principal place of business in Florida, and is a citizen of Florida. Miami Sun is owned and operated by Marta Klioner and Gleb Klioner. Marta Klioner and Gleb Klioner are both officers of Miami Sun.

Defendant Choir is a foreign business existing under the laws of Russia and is a citizen of Russia.

Defendant Michael Touretsky is the producer of the Choir and a citizen of Russia.

2. *The Contract and Tour*

Gelfman International has been in the business of promoting and planning entertainment events around the world for the last

---

[2]Gelfman International previously forfeited its corporate charter in 1996, and then revived its charter in 1999. Michelen Aff., Ex. I.

[3]Attorney for the Klioner and Miami Sun plaintiffs represented at oral argument on this motion that he confirmed with the Maryland authorities prior to argument that Gelfman International remained a defunct corporation. Plaintiff did not dispute this representation.

fifteen years. Amended Complaint at ¶¶ 22-23 ("Compl."),
Deposition of Mark Gelfman at 12 ("Gelfman Dep."). In June of
2004, Marta Klioner spoke with Gelfman International about
planning and promoting a series of choir performances by
Touretsky and his Choir,[4] having stated to Gelfman International
that she was their representative and agent.[5] Compl. at ¶¶ 24,
25, 27. Mark Gelfman had known both the Klioners professionally
and personally for several years. *Id.* at ¶ 26. It was agreed that
Touretsky and the Choir would perform in five cities: San
Francisco, Los Angeles, Chicago, Boston and Atlantic City
(collectively, the "Tour") between January 22 and January 29,

---

[4]The parties disagree as to whose idea the Tour was. Marta Klioner
testified in her deposition that she decided in the spring of 2004 to have a
Tour, and she made an oral agreement with Touretsky in May. Klioner Dep. at
119-120. Mark Gelfman testified that the Tour was his idea and that he brought
it to Marta Klioner and persuaded her to do it after satisfying her concerns
about funding. Gelfman Dep. at 102.

[5]Plaintiff alleges in the amended complaint that it was "well known in
the entertainment industry" that the Klioners and Miami Sun were the exclusive
agents for Touretsky in the United States, and had been so for approximately 6
years prior to the contract. Compl. at ¶ 31. Plaintiff has provided no
additional support for this claim. Indeed, Mark Gelfman in his deposition
acknowledged that Marta Klioner was not Touretsky's agent in the United
States. Gelfman Dep. at 93. In her deposition, Marta Klioner referred to
Touretsky as "her artist," but further testified that she was not an
authorized signatory on any bank accounts for Touretsky, and had no power of
attorney over his affairs. *Id.* at 129, 131, 159.
   At oral argument on the summary judgment motion, plaintiff stated that ¶
13 of Touretsky and the Choir's amended answer contained the admission that
Marta Klioner was their agent. Paragraph 13 responded to ¶ 33 of plaintiff's
amended verified complaint, which alleged that Touretsky acknowledged Marta
Klioner, Gleb Klioner, and Miami Sun to be his "exclusive agents." Touretsky
and the Choir's answer reads as follows: "To the extent that the phrase
'agent' as used in paragraph 33 of Plaintiff's Amended Verified Complaint is
intended to mean 'booking agent' for the purpose of arranging concerts
TOURETSKY demits [sic] the allegations contained therein. To the extent that
the phrase 'agent'... is intended to mean agent of any other purpose TOURETSKY
denies same." Answer ¶ 13. The admission that Klioner was a booking agent is
insufficient to establish that Marta Klioner was Touretsky's agent for legal
purposes.

2005. Compl. at ¶ 38.

The parties dispute the nature of the agreement regarding participation in the work of the tour and sharing of its profits.[6] According to plaintiff, it was agreed that plaintiff would plan and promote each of the five events and assume responsibility for promotion and production expenses. *Id.* at ¶¶ 36, 37. Proceeds from the tour, defined as total box office receipts, would be divided as follows: initially all tour expenses would be reimbursed to the party that had incurred them; the balance remaining (the "net" proceeds) would be divided equally, with Gelfman International receiving fifty percent and Miami Sun receiving fifty percent. Gelfman Dep. at 161. Touretsky and the Choir would not share in the profits but would instead be paid their fee out of Marta Klioner's half of the proceeds. Aliki Gelfman Dep. at 143-43. Plaintiff alleges that Marta Klioner stated that Touretsky and the Choir agreed to the proposal.[7] Compl. at ¶¶ 36, 64.

---

[6]The parties' disputes regarding the nature of the purported agreement between plaintiff and Marta Klioner are not material to the resolution of this motion, as the motion for summary judgment by the Klioners and Miami Sun does not address the merits of plaintiff's claims. I include these facts as context.

[7]Plaintiff makes a number of allegations in its amended complaint regarding Touretsky's knowledge of plaintiff's involvement in planning the Tour, the degree of contact between plaintiff and Touretsky, the involvement of Touretsky in the planning and promotion process, and Touretsky's acceptance of the terms of the agreement regarding distribution of profits after the tour. Defendants dispute these allegations, pointing to allegedly contradictory statements made in depositions by Mark Gelfman and Aliki Gelfman. These disputes are addressed below.

According to Marta Klioner, plaintiff's involvement in the Tour was limited to the ticket sales and promotion of the performance at the Taj Mahal venue in Atlantic City. Klioner Dep. at 71, 143, 150-52. Gelfman International was to receive an 8% commission on sales. *Id*. at 142-43. If the ticket sales reached a certain number, Gelfman International would receive a bonus of $25,000. *Id*. at 143. There was no further agreement for promotion, payment, or profit sharing. *Id*. at 152.[8]

Neither Mark Gelfman nor Aliki Gelfman, acting on behalf of plaintiff Gelfman International, spoke to Touretsky or the Choir directly about the Tour before it commenced. Gelfman Dep. at 116; Aliki Gelfman Dep. at 138-39. Instead, all arrangements were made with Marta Klioner and Miami Sun. Gelfman Dep. at 94, 96. The Gelfmans relied on statements by Marta Klioner regarding Touretsky's agreement to the terms of the contract, and testified that they had no direct knowledge as to whether Touretsky knew about Gelfman International's involvement in the Tour.[9] *Id*. at

---

[8]Mark Gelfman testified that Gelfman International played two roles in the Tour: first, it promoted the Tour in all five of the cities; second, it was a ticket broker in New York for the Taj Mahal performance. Gelfman Dep. at 61, 187. Gelfman International allegedly worked on advertising, booking Touretsky and the Choir at two of the concert halls, making airline and hotel reservations, and supplying funds for deposits and other expenses. Compl. at ¶¶ 65, 79; Gelfman Dep. at 61-62. Mark Gelfman conceded that Miami Sun made the performance arrangements with three of the five theaters and that the technical details of the Tour were handled by Miami Sun. Gelfman Dep. at 122, 183-84.

[9]These statements, based on deposition testimony by Mark and Aliki Gelfman, contradict allegations in plaintiff's amended complaint, filed after I granted Touretsky and the Choir's motion to dismiss the complaint for failure to state a claim against them.

116, 222; Aliki Gelfman Dep. at 157. Aliki Gelfman made one call
to Touretsky's Moscow office prior to the Tour, but it did not
concern terms of the contract. Gelfman Dep. at 141-42. Mark
Gelfman and Aliki Gelfman testified that Marta Klioner attempted
to prevent them from contacting Touretsky directly in preparation
for the Tour. Gelfman Dep. at 221; Aliki Gelfman Dep. at 34. The
first time Touretsky became aware of Gelfman International's
involvement in the Tour was after the Tour was over, when a
letter was sent to Touretsky's Moscow office. Gelfman Dep. at
132.

Plaintiff alleges that, after the tour was completed,
defendants took possession of the box office receipts from four
of the five performances, without reimbursing plaintiff for
expenses or distributing plaintiff's share of the profits. Compl.
at ¶ 81. However, the proceeds of the largest venue (Atlantic
City's Taj Mahal) were retained by plaintiff. Aliki Dep. at 72-
73.

Touretsky and the Choir were paid a set fee of $150,000 for
their services. Touretsky 56.1 Stmt. ¶ 3; Deposition of Marta
Klioner at 125.

3. *Procedural History*

Plaintiff commenced this action on August 11, 2005.
Defendants thereafter made a motion to dismiss and to change
venue. In my February 9, 2006 opinion, I denied the motion to

change venue, dismissed two claims, and dismissed the claims
against Touretsky and the Choir. I found that plaintiff had
asserted no fact that could suggest that Touretsky or the Choir
were aware of plaintiff's role in planning the Tour or of the
contract, and therefore they could not be deemed to have ratified
the contract or to have incurred liability to plaintiff on a
theory that they benefitted from plaintiff's actions. On March 9,
2006, plaintiff amended the complaint to include several specific
allegations that Touretsky knew of the contract and ratified
it.[10] On December 12, 2006, the case was referred to mediation.
On March 15, 2007, the parties reported to the Magistrate Judge
that mediation had successfully narrowed the issues, but that the
litigation would continue. On January 5, 2009, the Klioners and
Miami Sun filed a motion for summary judgment and for leave to
amend their answer, and Touretsky filed a motion for summary
judgment and motion for Rule 11 sanctions. On March 10, 2009,

---

[10]The amended complaint alleged the following new claims against
Touretsky: (1) Touretsky acknowledged to plaintiff that the Klioners and Miami
Sun were acting as his exclusive agents and that he agreed to participate in
the venture, Compl. at ¶ 35; (2) Touretsky acknowledged that he was fully
aware of plaintiff's involvement in the venture, and he agreed to the terms
and responsibilities of the partners, *id*. at ¶ 50; (3) Mark Gelfman and
Gelfman International's agents on several occasions called Touretsky in Russia
to discuss details of the venture, *id*. at ¶ 53; (4) Mark Gelfman and Gelfman
International employees personally spoke with a representative of Touretsky
and the Choir in Russia, *id*. at ¶ 55; (5) Touretsky and the Choir agreed that,
after reimbursement of expenses, the net proceeds of the Tour would be divided
equally, *id*. at ¶ 64; (6) Touretsky knew about Gelfman International's role in
the Tour from multiple telephone calls made by plaintiff to Touretsky and the
Choir, *id*. at ¶ 67; (7) Touretsky had constructive knowledge of the extent and
scope of Gelfman International's involvement in the Tour, *id*. at ¶ 69; and (8)
Touretsky unequivocally confirmed, in his words, actions, and deeds, and
further ratified by his conduct with plaintiff, that he understood that
Gelfman International was a party to the transaction. *Id*. at ¶ 76.

plaintiff filed a cross motion for leave to amend the complaint.

## DISCUSSION[11]

### I. Lack of Capacity

Defendants Marta Klioner, Gleb Klioner and Miami Sun (for the purposes of this section, "defendants") argue that summary judgment should be granted in their favor because plaintiff forfeited its corporate status in Maryland and therefore lacked the capacity to file a law suit. Defendants did not include in their answer to the complaint an affirmative defense of lack of capacity to sue. Defendants now move pursuant to Federal Rule of Civil Procedure 15(a) to amend their pleading to include this defense. Plaintiff does not challenge the application of Maryland business law to this case, nor does it claim that a corporation that has forfeited its charter has the capacity to sue.[12] Instead, plaintiff argues that defendant waived the defense of corporate capacity, or, in the alternative, defendants should be equitably estopped from avoiding their obligations to plaintiff. In the event that its arguments pertaining to the corporation

---

[11]This Court has diversity jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332(a).

[12]Without speaking directly to the question of forfeiture, plaintiff states that it had a good faith basis to believe that the corporate entity in Maryland was a viable entity. This is not the standard for corporate existence under Maryland law, nor does plaintiff cite any law to support its position. Once Gelfman International forfeited its charter, it ceased to exist, regardless of its good faith belief to the contrary.

fail, plaintiff requests leave to amend its complaint to name Mark Gelfman and Aliki Gelfman in their individual capacities or Gelfman International as sole proprietorship as plaintiffs.

## A. Gelfman International Lacked Capacity to Sue

Federal Rule of Civil Procedure 17(b) states that a corporation's capacity to sue is governed by the law under which it was organized. Fed. R. Civ. Pro. 17(b)(2). Gelfman International was organized in Maryland, where, "once a corporation's charter is revoked and forfeited, the corporation ceases to exist as a legal entity. Once a corporation's existence has been terminated, the defunct corporation can neither sue, nor be sued, either *in rem* or *in personam*." *Definitive Res., Inc. v. United States*, 2006 U.S. Dist. LEXIS 85868, at *4, 98 A.F.T.R.2d (RIA) 7945 (D. Md. November 28, 2006) (citations omitted); *see also FDIC v. Heidrick*, 812 F.Supp. 586, 592-93 (D. Md. 1991). An action may be brought in the name of a corporation whose charter has been forfeited, but only as part of a good faith liquidation or winding up of the affairs of the corporation. *See Mintec Corp. v. Minton*, 392 B.R. 180 (D.Md. 2008).

Plaintiff asserted in its amended complaint that it was a corporation organized and existing under the laws of the State of Maryland, duly registered with the State of Maryland. Compl. at ¶ 2. Defendants submitted evidence that plaintiff forfeited its

corporate charter on October 7, 2002. Michelen Aff., Ex. I. There is no indication that the litigation was brought as part of a good faith liquidation or winding up of the affairs. Under Maryland law, at the time the suit was commenced and continuing into the present, Gelfman International lacked the capacity to sue or be sued.

## B. Waiver and Motion to Amend the Answer

Federal Rule of Civil Procedure 8(c) requires that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively... any... matter constituting an avoidance or affirmative defense." "[A] party's failure to plead an affirmative defense bars its invocation at later stages of the litigation." *Doubleday & Co. v. Curtis*, 763 F.2d 495, 503 (2d Cir. 1985). Similarly, a defense of lack of capacity can be waived if not raised in the initial responsive pleading to a claim. *See Pressman v. Estate of Steinvorth*, 860 F.Supp. 171, 176 (S.D.N.Y. 1994). However, waiver of this affirmative defense "may not be proper where the defense is raised at the first pragmatically possible time and applying it at that time would not unfairly prejudice the opposing party." *American Federal Group, Ltd. v. Rothenberg*, 136 F.3d 897, 910 (2d Cir. 1998); *see also Asbestos Workers Syracuse Pension Fund v. M.G. Industrial Insulation Co.*, 875 F. Supp. 132, 137 (N.D.N.Y. 1995) (accepting

a post-answer assertion of a capacity defense, citing cases from
the Fifth and Seventh Circuits in which courts permitted parties
to raise capacity defenses on the eve of trial). A party may be
given leave to amend its answer to assert affirmative defenses at
later stages of the litigation. *See Schwind v. EW & Assocs.*, 357
F. Supp. 2d 691, 697-98 (S.D.N.Y. 2005).[13] "A motion to amend
should be denied only for such reasons as undue delay, bad faith
or undue prejudice to the opposing party." *Richardson
Greenshields Securities, Inc. v. Mui-Hin Lau*, 825 F.2d 647, 653
n.6 (2d Cir. 1987) (internal quotations omitted).

In determining whether an amendment would subject a party to
undue prejudice, a court considers "whether the assertion of the
new claim would: (i) require the opponent to expend significant
additional resources to conduct discovery and prepare for trial;
(ii) significantly delay the resolution of the dispute; or (iii)
prevent the plaintiff from bringing a timely action in another
jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350
(2d Cir. 1993). A delay in asserting the affirmative defense,
"absent a showing of bad faith or undue prejudice, does not
provide a basis for the district court to deny the right to
amend." *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d

---

[13]Permitting defendants to raise the capacity defense early in the
litigation but not exclusively in their answers takes account of the liberal
amendment policy of Fed. R. Civ. P. 15, which allows a defendant to conform
its pleadings to a capacity defense raised after the initial answer is filed.
*See* 5 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure §
1295 (1990).

843, 856 (2d Cir. 1981); *see also Richardson*, 825 F.2d at 653 n.6

(collecting cases in which delays of several years did not bar

amendment of answer). A district court may consider the merits of

an affirmative defense raised for the first time at the summary

judgment stage, so long as the plaintiff has had an opportunity

to respond. *Curry v. City of Syracuse*, 316 F.3d 324, 330-31 (2d

Cir. 2003) (allowing collateral estoppel to be raised as an

affirmative defense even though raised for the first time in

reply memorandum in support of a motion for summary judgment

where plaintiff was provided notice, had an opportunity to

respond and was not prejudiced by failure to plead the

affirmative defense in answer); *see also Schwind*, 357 F. Supp.

2d at 698-99 (collecting cases).

In this case, there has been no showing of undue delay, bad

faith, or undue prejudice. The fact that Gelfman International

was a defunct corporation was not discovered until depositions

were completed,[14] as the complaint had wrongly stated that the

corporation was validly registered in Maryland. Defendants raised

the issue once they obtained the relevant discovery. With regard

to prejudice, the statute of limitations on plaintiff's claims is

---

[14]Defendants do not specify whose deposition provided this information, stating only that "defendant[s] raised this issue once we obtained all the discovery and deposed the person with the requisite knowledge at the corporation." Def. Mem. at 16.

six years,[15] and therefore dismissal of this complaint does not preclude the filing of another complaint.[16]

Plaintiff argues that the evidence of Gelfman International's corporate status was a matter of public record, and did not require litigation to discover. However, defendants were entitled to rely on plaintiff's complaint when it stated that it was and still is a corporation organized and existing under the laws of Maryland. *See Automated Information Processing, Inc. v. Genesys Solutions Group, Inc*., 64 F.R.D. 1, 3 (E.D.N.Y. 1995) ("it is of course a party's obligation to conduct a reasonable inquiry concerning the truth of the allegations made in its pleadings."); *see also Animazing Entertainment*, 88 F.Supp.2d at 268. Plaintiff additionally states that it will suffer undue prejudice because defendants seek to bar recovery on all causes of action. This does not constitute undue prejudice. *See Schwind*, 357 F. Supp. 2d at 698 (citing cases in which affirmative defenses were permitted to be asserted on summary judgment).[17]

Therefore, because the defense was raised at the first

---

[15]New York law provides a six year statute of limitations for breach of contract, quantum meruit, promissory estoppel, unjust enrichment, and accounting claims. *See* N.Y. C.P.L.R. 213.

[16]The events giving rise to this litigation took place in January, 2005.

[17]Any additional prejudice asserted by plaintiff would be solely attributable to plaintiff's misrepresentations or failure to verify the facts contained in its complaint.

pragmatically possible time and there is no unfair prejudice to plaintiff, defendants' failure to assert the capacity defense in their answer does not constitute a waiver in this case. The application to amend the answer is granted.

## C. Estoppel

Plaintiff argues that, because defendants received the benefit of performance on the contract, defendants are equitably estopped from avoiding their obligations to the corporation under it. Under New York law, as a general rule, "one who contracts or deals with an entity as a corporation thereby admits that the entity is a corporation and is estopped to deny its incorporation in an action arising out of the contract or course of dealing." *International Sport Divers Ass'n, Inc. v. Marine Midland Bank, N.A.*, 25 F.Supp.2d 101, 109 (W.D.N.Y. 1998). However, "[t]he doctrine of estoppel may not be invoked unless the corporation has at least *de facto* existence." *Puro Filter Corp. v. Trembley*, 266 A.D. 750, 751; 41 N.Y.S.2d 472 (2d Dept. 1943). Furthermore, "there may be an equitable estoppel only when the one against whom it is claimed acts with knowledge or under circumstances that charge knowledge." *Id*. Thus, in order for plaintiff to establish that Gelfman International should be treated as a corporation by estoppel, it must show that Gelfman, Inc. was a *de facto* Maryland corporation and that defendants knew (or should

have known) that Gelfman International was not incorporated at the time. *See Fonda Group v. Lewison*, 162 F. Supp. 2d 292, 302 (D. Vt. 2001). Plaintiff has failed to make this showing. Plaintiff makes no allegation that defendants knew the corporation was dissolved, nor has plaintiff shown that Gelfman International is a *de facto* corporation.

"Under New York law, a business may under certain circumstances be treated as a *de facto* corporation even if its legal charter has expired." *Animazing Entertainment*, 88 F.Supp.2d at 269 (citing New York cases). In order to be considered a *de facto* corporation, a business "must function as if it were a corporation and make substantial efforts to either incorporate or remedy any defects of incorporation upon their discovery." *Id*. New York courts recognize a business as a *de facto* corporation in cases where the business inadvertently failed to meet the requirements of the law or was operating with the formalities of a corporation and was attempting to achieve legal status. *Id*. (citing *Garzo v. Maid of The Mist S.B. Co.*, 303 N.Y. 516; 104 N.E.2d 882 (1952), *Ludlum Corp. Pension Plan Trust v. Matty's Superservice, Inc.*, 156 A.D.2d 339; 548 N.Y.S.2d 292 (2d Dept. 1989)). Failure to pay back taxes has been held to preclude consideration of a business as a de facto corporation. *See George v. Yusko*, 169 A.D.2d 865, 866-67; 564 N.Y.S.2d 597, 598 (3d Dept. 1991). In this case, although Gelfman International was operated

as a corporation, there is no evidence that it made efforts to remedy defects of incorporation in Maryland. Furthermore, the source of the defect was failure to pay taxes, which has been found to bar a finding of a *de facto* corporation.

The application to treat plaintiff as a corporation by estoppel is denied.


## D. Amendment of Complaint

In response to defendants' arguments regarding plaintiff's defunct corporate status, plaintiff seeks leave to amend the complaint to name as plaintiffs Mark and Aliki Gelfman in their individual capacities and Gelfman International Enterprises as a sole proprietorship.

Federal Rule of Civil Procedure 15(a) directs that leave to amend a pleading following a responsive pleading "shall be freely given when justice so requires." The decision whether to permit or disallow amendment of a pleading is within the district court's discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321; 91 S. Ct. 795; 28 L. Ed. 2d 77 (1971). Although leave to amend is not automatic, "only 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of the amendment' will serve to prevent an amendment prior to trial."

*Sterling v. Interlake Indus. Inc.*, 154 F.R.D. 579, 588-89
(E.D.N.Y.1994) (quoting *Foman v. Davis*, 371 U.S. 178, 182
(1962)); *see also Barrows v. Forest Labs., Inc.*, 742 F.2d 54, 58
(2d Cir. 1984).

Defendants argue that leave to amend should be denied on the
ground that an individual should not be allowed to benefit from
his misrepresentation of corporate status and from the
corporation's flouting of tax laws, *see Animazing Entertainment*,
88 F. Supp. 2d at 271, given that the fact of the corporation's
non-existence was within plaintiff's ability to ascertain.
Defendants maintain that "justice would not be served if the
plaintiffs were rewarded for their failures, oversights and
misrepresentations by permitting an amendment to the pleadings."
*Automated Info. Processing v. Genesys Solutions Group*, 164 F.R.D.
1, 3-4 (E.D.N.Y. 1995).

Justice requires that plaintiff be given leave to amend the
complaint by substituting new plaintiffs for the purpose of
litigating the four equitable claims that remain following the
dismissal of the breach of contract claim.[18] There is no evidence
that plaintiff misrepresented its corporate status in bad faith[19]

_____

[18]As further discussed below, because the corporation Gelfman
International did not exist at the time the contract was purportedly formed,
thereby preventing the proper formation of the contract, there is no
contractual interest that may be asserted by Mark and Aliki Gelfman.

[19]Plaintiff simply offers no explanation for why it permitted Gelfman
International to forfeit its corporate charter, and what actions it took to
remedy the situation afterwards. There is no affidavit from an accountant, an

or that defendants will suffer undue prejudice as a result of the amendment. The record indicates that Mark and Aliki Gelfman dealt directly with Marta Klioner, and there is no suggestion that their holding out of Gelfman International as a registered corporation gained them any particular benefit with respect to defendants. It would be unjust to permit defendant Klioners and Miami Sun to escape liability for any funds paid by Mark and Aliki Gelfman[20] to cover the costs of the Tour on the ground that Gelfman International was not a properly registered corporation. The motion for leave to amend the complaint is granted.

## II. Summary Judgment

## A. Standard

A court must grant a motion for summary judgment if the movant shows that "there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is

---

attorney, or anyone else to establish that, notwithstanding the corporation's failure to pay its property return for the past eight years, it has otherwise satisfied its tax obligations and taken all other steps to maintain its existence in accordance with the requirements of the law. Instead, plaintiff asserts that it had a "good faith basis" to believe the corporate entity in Maryland was a viable entity, implying that plaintiff did not affirmatively misrepresent its corporate status. Supporting this claim is testimony by Mark Gelfman and Aliki Gelfman, who stated in their depositions that they were unaware that the corporation had dissolved. Gelfman Dep. at 86, Aliki Gelfman Dep. at 127.

[20]Mark Gelfman and Aliki Gelfman cannot recover unless they establish that they are entitled to receive money owed to the entity Gelfman International.

appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elec. Inspectors, Inc. v. Vill. of E. Hills*, 320 F.3d 110, 117 (2d Cir. 2003). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.* Although all facts and inferences therefrom are to be construed in the light most favorable to the non-moving party, the non-moving party must raise more than a "metaphysical doubt" as to the material facts. *See Matsushita*, 475 U.S. at 586; *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001). The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990). Rather, the non-moving party must produce more than a scintilla of admissible evidence that supports the pleadings. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968); *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). In deciding

such a motion, the trial court must determine whether "after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

## B. Claims

I first address the breach of contract claim as against all defendants. I proceed to consider the motion by defendants Touretsky and the Choir for summary judgment on each of plaintiff's remaining claims.

## 1. Breach of Contract

In order to succeed on a breach of contract claim under New York law, a plaintiff must demonstrate: (1) the existence of a valid agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages. *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1998). In order to be bound by the terms of a contract, one must be a party to a contract, a signatory to a contract, or have expressly agreed to be bound by the terms of the contract. *See D'Andrea v. Rafla Demetrious*, 3 F.Supp.2d 239 (E.D.N.Y. 1996). Under New York law, a nonexistent corporation does not have the legal capacity to form a contract. *Animazing Entertainment*, 88 F.Supp.2d at 270

(citing *International Sport Divers v. Marine Midland Bank, N.A.*, 25 F.Supp.2d 101, 112 (W.D.N.Y. 1998)).

Gelfman International was not a party to any contract with defendants because it had neither a *de jure* nor a *de facto* existence and because equity does not require that it be treated as if it were a corporation at the time the contract was signed. Plaintiff's complaint states clearly that the agreement was between Gelfman International, Marta Klioner, Gleb Klioner, Touretsky, and the Choir. Compl. at ¶ 39. The individuals Mark Gelfman and Aliki Gelfman are not named as parties to the agreement. Consequently, unless there is an equitable reason to reform the contract to treat Mark and Aliki Gelfman as parties to it, the contract was void from its inception for lack of two contracting parties. Plaintiff has presented no reason why equity requires the reformation of the contract. Accordingly, the breach of contract claim is dismissed against all defendants.[21]

## 2. Remaining Claims Against Touretsky and the Choir

Under New York law, in order to recover damages under a

---

[21]Furthermore, Touretsky cannot be held liable for any alleged breach of an agreement because there is no evidence that he was a party to this agreement with Gelfman International. Plaintiff's allegations in the complaint that Touretsky agreed to be bound by the terms of this agreement are directly contradicted by deposition testimony given by Mark Gelfman and Aliki Gelfman, who both admitted that neither had spoken directly to Touretsky at any point prior to the Tour, and that the contract was not discussed with anyone in Touretsky's office in Russia prior to the Tour. Instead, all communication was conducted through the Klioners. No reasonable fact finder could find that Touretsky and the Choir were parties to any agreement.

theory of *quantum meruit*, a plaintiff must show (1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefore; and (4) the reasonable value of the services. *Bauman Associates, Inc. v. H & M International Transport, Inc.*, 171 A.D.2d 479, 483-84; 567 N.Y.S.2d 404, 408 (1st Dept. 1991). In this case, there is no proof that Touretsky and the Choir "accepted" any services from plaintiff. By plaintiff's own admissions, Touretsky and the Choir were unaware of plaintiff's role in planning the Tour until after the Tour was completed. No reasonable fact finder could conclude that Touretsky and the Choir were liable on a theory of *quantum meruit*.

The elements of promissory estoppel are (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained in reliance on that promise. *Williams v. Eason*, 49 A.D.3d 866, 868; 854 N.Y.S.2d 477 (2d Dept. 2008). Plaintiff has not shown the existence of a clear and unambiguous promise. The deposition testimony by Mark Gelfman and Aliki Gelfman indicates that there was no communication with Touretsky or the Choir prior to the Tour. No reasonable fact finder could conclude that grounds for promissory estoppel exist against Touretsky and the Choir.

To succeed on a claim for unjust enrichment, a plaintiff must show that (1) the other party was enriched; (2) at plaintiff's expense; and (3) it is against equity and good conscience to permit the other party to retain what is sought to be recovered. *Citibank, N.A. v Walker*, 12 A.D.3d 480, 481; 787 N.Y.S.2d 48 (2004). The mere fact that the defendant received a benefit is insufficient; the plaintiff must show that the enrichment was unjust. *See Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 120; 672 N.Y.S.2d 8 (1st Dept. 1998). Plaintiff has not shown that any payment by the Klioners and Miami Sun to Touretsky and the Choir was at plaintiff's expense. There is no evidence that Touretsky and the Choir received any benefit from the alleged profit sharing agreement. Instead, the record indicates that Touretsky and the Choir were paid a set fee of $150,000 for their services. Plaintiff appears to suggest that this fee was paid out of the profits from the Tour, which somehow violated the alleged agreement with Marta Klioner and Miami Sun.[22] Plaintiff fails to develop this argument or establish that there is a material issue of fact as to whether Touretsky and the Choir received their fee at plaintiff's expense. The motion for summary judgment on this claim is granted.

"The right to an accounting is premised upon the existence

---

[22]Plaintiff does not address this issue in its argument, but instead indicates that this may be its position in its recitation of the facts. Pl. Opp. at 5-7.

of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." *Palazzo v. Palazzo*, 121 A.D.2d 261, 265; 503 N.Y.S.2d 381 (1st Dept. 1986). There is no evidence in the record to support a claim that Touretsky and the Choir had a confidential or fiduciary relationship with plaintiff. Summary judgment is granted to Touretsky and the Choir on this claim.

In opposition, plaintiff raises the same arguments that I previously rejected in the motion to dismiss, namely that Touretsky and the Choir were bound by the actions of Klioners and Miami Sun, who had apparent authority to act as agents for Touretsky and the Choir, and that Touretsky and the Choir ratified the actions of the Klioners and Miami Sun by participating in the Tour. In my decision granting the motion to dismiss Touretsky and the Choir, I held that plaintiff made no allegation that it had any contact whatsoever with the principal, and accordingly there was no apparent agency. *See In the Matter of the Arbitration between Herlofsen Management A/S and Ministry of Supply, Kingdom of Jordon,* 765 F.Supp 78, 88 (S.D.N.Y. 1991) ("The existence of the apparent authority must be 'traceable' to the principal, and cannot be established by the unauthorized acts, representations, or conduct of the agent."). I further determined that, while Touretsky and the Choir may have retained

the benefits of plaintiff's efforts, plaintiff had not asserted any fact indicating that Touretsky or the Choir were aware of plaintiff's role in planning the tour, and therefore there was no ratification of the contract. *See Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,* 850 F.Supp. 1199, 1213 (S.D.N.Y. 1994) (the principal must have knowledge of all "material facts" in order to be deemed to have ratified the act of the agent). The record now shows that plaintiff *admits* having no contact with Touretsky or the Choir prior to the Tour, and *admits* that it has no knowledge that Touretsky or the Choir were aware of its role in planning the Tour. Instead, plaintiff assumed knowledge based on discussions with Marta Klioner and Miami Sun. Plaintiff's arguments fail for the reasons stated in my previous opinion.

## III. Motion for Sanctions

Defendants Touretsky and the Choir (for the purposes of this section, "defendants") have made a motion for sanctions against plaintiff and plaintiff's counsel, James F. Woods & Associates, P.C.[23] The motion claims that plaintiff, following the dismissal

---

[23]The motion for sanctions was made separately from any other motion, in compliance with Rule 11(c)(2). Furthermore, Touretsky and the Choir have submitted an affidavit attesting that a copy of the memorandum of law in support of the motion for sanctions was sent by express and electronic mail to plaintiff's counsel on January 6, 2009. Affirmation of Sumeet Sondhi, February 2, 2009, at ¶ 3. As of February 2, 2009, plaintiff had not withdrawn the claim. Therefore the requirement to provide plaintiff 21 days to withdraw the claim prior to filing the Rule 11 motion was properly fulfilled. *See* Fed. R.

of claims against defendants, amended its complaint to make specific allegations against defendants that were entirely lacking in factual foundation and could not have been made on a good faith basis. Defendants refer to the depositions of Mark Gelfman and Aliki Gelfman, which include statements that contradict the claims of the amended complaint. Defendants assert that the amended complaint was drafted to mirror the language in the order granting dismissal and to force Touretsky to remain in this case without grounds to do so.

## A. Rule 11 Sanctions

Rules 11(b) and 11(c) of the Federal Rules of Civil Procedure provide, in relevant part, as follows:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> ....
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;
> ....
> (c) Sanctions.
> (1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule

---

Civ. Pro. 11(c)(2).

11(b) has been violated, the court may impose an
appropriate sanction on any attorney, law firm, or
party that violated the rule or is responsible for the
violation.
....
     (4) Nature of a Sanction. A sanction imposed under
this rule must be limited to what suffices to deter
repetition of the conduct or comparable conduct by
others similarly situated. The sanction may include...
an order directing payment to the movant of part or all
of the reasonable attorney's fees and other expenses
directly resulting from the violation.
....
     (6) Requirements for an Order. An order imposing a
sanction must describe the sanctioned conduct and
explain the basis for the sanction.

Fed. R. Civ. P. 11.

"A pleading, motion or other paper violates Rule 11 either

when it has been interposed for any improper purpose, or where,

after reasonable inquiry, a competent attorney could not form a

reasonable belief that the pleading is well grounded in fact and

is warranted by existing law or good faith argument for the

extension, modification, or reversal of existing law."

*Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002). Rule 11

"explicitly and unambiguously imposes an affirmative duty on each

attorney to conduct a reasonable inquiry into the viability of a

pleading before it is signed." *Guiterrez v. Fox*, 141 F.3d 425,

427 (2d Cir. 1998) (quoting *Eastway Constr. Corp. v. City of New

York*, 762 F.2d 243, 253 (2d Cir. 1985)). Hence, "the standard for

triggering the award of fees under Rule 11 is objective

unreasonableness, and is not based on the subjective beliefs of

the person making the statement." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003) (internal quotation and citation omitted).[24] "Simply put, subjective good faith no longer provides the safe harbor that it once did, before Rule 11 was amended." *Eastway Const. Corp. v. New York*, 762 F.2d 243, 253 (2d Cir. 1985). "[W]here strictures of the rule have been transgressed, it is incumbent upon the district court to fashion proper sanctions." *Id*. The imposition of sanctions by the court and the determination of the amount of the sanction is left to the court's discretion. *See Caisse Nationale De Credit Agricole-CNCA v. Valcorp, Inc*., 28 F.3d 259, 266 (2d Cir. 1994).

**B. Sanctions Are Warranted Against Counsel to Plaintiff**

When this Court dismissed the plaintiff's Complaint, it stated that plaintiff was given leave to file an amended complaint, provided that it could do so within the strictures of Rule 11. Plaintiff's counsel has violated Rule 11 by filing an amended complaint containing allegations against Touretsky that are wholly unsupported by the facts.

Plaintiff's counsel's conduct constitutes a transgression of the requirement of Rule 11(b)(3) that the factual contentions

---

[24]When sanctions proceedings are initiated by a court, the standard is one of "bad faith," because the party to be sanctioned does not have an opportunity to withdraw the offending document on notice pursuant to the "safe harbor" provision located in 11 (c)(1)(A). *See In re Pennie & Edmonds LLP.*, 323 F.3d 86, 87 (2d Cir. 2003).

have evidentiary support. With regard to factual contentions, "sanctions may not be imposed unless a particular allegation is utterly lacking in support." *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) (interpreting the 1993 amendment to Rule 11(b)). The testimony given by Mark Gelfman and Aliki Gelfman in their respective depositions clearly shows that there is no factual basis for the allegations in the complaint that the Gelfmans had direct contact with Touretsky and the Choir prior to the Tour and that Touretsky had knowledge of and had agreed to the terms of the contract. Given that my opinion dismissing the earlier claims against defendants specifically identified the lack of communication between Touretsky and Gelfman International as a fatal flaw in the complaint, and rejected the argument that Marta Klioner acted as an agent for Touretsky in accepting the terms of the agreement, the decision to assert new allegations against Touretsky concerning his connection to the contract without facts to support such allegations was inexcusable. Deposition testimony by the Gelfmans reveals that they continued to assert Touretsky's liability on the failed theory of agency that I had rejected in the motion to dismiss. Even assuming that counsel to the plaintiff did not insert these allegations for the improper purpose of creating delay or increasing the cost of litigation, counsel is subject to sanctions for failing to conduct a reasonable inquiry into the viability of the pleading

before it was signed. See *Guiterrez*, 141 F.3d at 427. As a result of counsel's decision to include factually unsupportable allegations in the amended complaint, the litigation against Touretsky has been needlessly prolonged by more than three years.

Plaintiff's counsel has failed to respond to the serious allegations made by defendants. Instead, plaintiff makes the same arguments that I rejected in my opinion dismissing the claims against defendants, that Marta Klioner acted as an agent for Touretsky and asserts that there was a "good faith" basis for its allegations against Touretsky. However, that is not the standard under Rule 11.

There is no question that the allegations of the amended complaint against Touretsky and the Choir are baseless. However, the issue remains whether the fault lies with the plaintiff, its counsel, or both. Defendants argue that, because plaintiff never requested to depose Touretsky or anyone from the Choir, plaintiff must have lacked confidence in the allegations against Touretsky. However, there is no evidence that Mark and Aliki Gelfman intentionally made unsupportable accusations against Touretsky. It is plausible that they misunderstood the requirements for asserting direct knowledge on the part of Touretsky of the promotion agreement. When questioned about the allegations of the complaint in their depositions, Mark and Aliki Gelfman appeared to see no contradiction between the fact that they had never

spoken to Touretsky prior to the Tour, and their allegations that he had direct knowledge of Gelfman International's involvement in the Tour. When pressed, both witnesses indicated their firm belief that information about their work on the Tour was relayed by Marta Klioner to Touretsky, based on their knowledge of the working relationship between Klioner and Touretsky. While this belief is not enough to plead a claim for relief, as stated above, there is no indication that the Gelfmans proceeded against Touretsky in bad faith. Therefore, sanctions are appropriate against Mr. Woods only.

## CONCLUSION

For the reasons stated herein, the motions by defendants Touretsky and the Choir for summary judgment and Rule 11 sanctions are granted. Defendants Touretsky and the Choir are directed to submit an application for reasonable attorney's fees and costs, including the fees and costs associated with the preparation of the motion for Rule 11 sanctions, within thirty days of the date of this Order. The motion by defendants Marta Klioner, Gleb Klioner, and Miami Sun for summary judgment is granted. Plaintiff is granted leave to file a second amended complaint for the purpose of substituting Mark Gelfman and Aliki Gelfman as plaintiffs in place of Gelfman International. The Clerk is directed to transmit a copy of the within to all parties and the assigned Magistrate Judge.

SO ORDERED.

Dated:     Brooklyn, New York
           June 27, 2009


                    By: <u>/s/ Charles P. Sifton (electronically signed)</u>
                               United States District Judge