```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Gelfman International Enterprises,

                      Plaintiff,         05-CV-3826 (CPS)(RML)

    -against-
                                         MEMORANDUM
Miami Sun International Corp., Marta     OPINION
Klioner, and Gleb Klioner,               AND ORDER

                      Defendants.

----------------------------------------X
```
SIFTON, Senior Judge.

Plaintiff, Gelfman International Enterprises ("Gelfman International"), commenced this action against defendants Miami Sun International Corp., Gleb Klioner, Marta Klioner ("Klioner"), Michael Touretsky ("Touretsky"), and the Choir of Michael Touretsky a/k/a Moscow Jewish Choir (the "Choir") (collectively, "defendants") on August 11, 2005. The amended complaint sets forth claims for relief based on breach of contract, quantum meruit, promissory estoppel, unjust enrichment and for an accounting of the monies in contention. On July 27, 2009, I granted motions for summary judgment by Touretsky and the Choir and by the Klioners and Miami Sun. I also granted a Rule 11 motion for sanctions against plaintiff's attorney, James F. Woods, Esq., by Touretsky. Now before the Court is a motion for reconsideration of the grant of Rule 11 sanctions against plaintiff's counsel. For the reasons stated herein, the motion for reconsideration is denied.

## BACKGROUND

Familiarity with the facts of the underlying dispute is assumed. *See Gelfman Int'l Enters. v. Miami Sun Int'l Corp.*, 2009 U.S. Dist. LEXIS 64274 (E.D.N.Y. July 27, 2009). Only the facts relevant to this motion are set forth below.

Plaintiff is in the business of promoting entertainment acts. In 2004, plaintiff and defendant Marta Klioner spoke about bringing defendants Touretsky and his Choir to the United States for a series of performances in five cities in January of 2005. Plaintiff has alleged that the parties agreed that plaintiff would plan and promote the tour, all costs incurred by any party would be refunded, and after that any proceeds would be split evenly between plaintiff and Klioner. Plaintiff allegedly expended significant funds in planning and promoting the tour which were not refunded, and defendants allegedly failed to pay plaintiff its share of the profits.

Neither Mark Gelfman nor Aliki Gelfman, the owners of plaintiff Gelfman International, spoke to Touretsky or the Choir directly about the Tour before it commenced, as all arrangements were made through Klioner and Miami Sun. The Gelfmans relied on statements by Marta Klioner regarding Touretsky's agreement to the terms of the contract, and testified that they had no direct knowledge as to whether Touretsky knew about Gelfman

International's involvement in the Tour. Aliki Gelfman made one call to Touretsky's Moscow office prior to the Tour, but it did not concern terms of the contract, nor did she speak with Touretsky during the call. The first time Touretsky became aware of Gelfman International's involvement in the Tour was after the Tour was over, when a letter was sent to Touretsky's Moscow office.

Plaintiff commenced this action on August 11, 2005. Plaintiff alleged claims against all defendants, including Touretsky and the Choir, of breach of contract, fraud, and conversion. Defendants thereafter made a motion to dismiss and to change venue. In my February 9, 2006 opinion, I denied the motion to change venue, dismissed all claims against Touretsky and the Choir, and dismissed the second and third claims against the Klioners and Miami Sun. I found that plaintiff had asserted no fact that could suggest that Touretsky or the Choir were aware of plaintiff's role in planning the Tour or of the contract, and therefore they could not be deemed to have ratified the contract or to have incurred liability to plaintiff on a theory that they benefitted from plaintiff's actions. In particular, I noted that plaintiff's claim that Klioner acted as an agent of Touretsky and bound him to the contract failed on the ground that the existence of apparent agency authority must be traceable to the principal and cannot be established based solely on the unauthorized

representations of the agent. *See In the Matter of the Arbitration between Herlofsen Management A/S and Ministry of Supply, Kingdom of Jordon,* 765 F.Supp 78, 88 (S.D.N.Y. 1991). Without a showing of direct contact between Touretsky and plaintiff, plaintiff's agency theory failed. Having dismissed the claims on these grounds, I granted plaintiff leave to amend the complaint on the condition that it do so within the bounds of Rule 11.

On March 9, 2006, plaintiff amended the complaint to include several factual allegations that Touretsky knew of the contract and ratified it. On December 12, 2006, the case was referred to mediation, which was unsuccessful. On January 5, 2009, the Klioners and Miami Sun filed a motion for summary judgment and for leave to amend their answer. Also on January 5, Touretsky filed a motion for summary judgment and mailed to plaintiff a copy of a motion for Rule 11 sanctions, which asserted that plaintiff had amended its complaint to make allegations against Touretsky that were entirely lacking in factual foundation and could not have been made on a good faith basis, thereby prolonging Touretsky's involvement in the litigation by several years. When plaintiff did not withdraw its claims against Touretsky within the 21-day time limit proscribed by Rule 11(c),[1]

---

[1] Rule 11(c)(2), which sets out the procedure for filing a motion for sanctions, states that any motion for Rule 11 sanctions must first be served on the opposing party, who has 21 days after service in which to withdraw or correct the challenged claim, after which the motion may be filed with the

Touretsky filed the Rule 11 motion with the court. Plaintiff did not seek an extension of time in which to withdraw its claims against Touretsky with regards to the Rule 11 motion, nor did it make any indication that it wished to withdraw the claims against Touretsky. On March 10, 2009, plaintiff filed a cross motion for leave to amend the complaint to include the names of Mark Gelfman and Aliki Gelfman as plaintiffs, because Gelfman International is a defunct company and does not have standing to pursue a lawsuit.

Plaintiff filed a brief opposition to Touretsky's Rule 11 motion, which did not address the allegations in the motion. Instead, it stated that plaintiff was a well respected company in the industry, that Touretsky had previously used Klioner's services as a business agent, and that it is the standard custom and business practice of the industry for a business agent such as Klioner to bind an artist such as Touretsky. Plaintiff reiterated that it invested a large sum of money in the tour in reliance on Touretsky's actions and Klioner's statements, and that the money was not repaid.

On July 27, 2009, I granted the motions for summary judgment, leave to amend the complaint, and Rule 11 sanctions. In my discussion of Rule 11 sanctions, I determined that plaintiff's counsel had violated Rule 11 by filing an amended complaint containing allegations against Touretsky that were wholly

---

court. Fed. R. Civ. Pro. 11(c)(2).

unsupported by the facts, which constituted a violation of the requirement of Rule 11(b)(3) that the factual contentions in a complaint have evidentiary support.[2] I found that the testimony given by Mark Gelfman and Aliki Gelfman in their depositions, which were taken in November 2007 and October 2008, respectively, clearly showed that there was no factual basis for the allegations in the complaint that the Gelfmans had direct contact with Touretsky and the Choir prior to the tour and that Touretsky had knowledge of and had agreed to the terms of the contract. Instead, the Gelfmans continued to assert that Touretsky knew of the contract because he was in contact with Marta Klioner, who they considered to be his agent, an argument that I had specifically rejected in my opinion granting the motion to dismiss in 2006. Accordingly, the allegations against Touretsky in the amended complaint concerning Touretsky's direct contact with plaintiff were baseless.

I concluded that counsel was subject to sanctions for failing to conduct a reasonable inquiry into the validity of the amended complaint before it was signed. I declined to grant Touretsky's motion to sanction plaintiff under Rule 11, on the ground that it was plausible that Mark and Aliki Gelfman misunderstood the legal requirements for making the claim that

---

[2] "By presenting to the court a pleading, written motion, or other paper... an attorney... certifies that... the factual contentions have evidentiary support." Fed. R. Civ. Pro. 11(b)(3).

Touretsky had direct knowledge of the promotion agreement.[3]

Counsel to plaintiff timely filed a motion for reconsideration.

**DISCUSSION**

**I.   Standard for Motion for Reconsideration**

Civil motions for reconsideration in this District are governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3.[4] Reconsideration is appropriate in light of an intervening change of controlling law, the availability of new evidence, the need to correct a clear error, or to prevent manifest injustice. *See Doe v. New York City Dept. of Social Servs.*, 709 F.2d 782, 789 (2d Cir. 1983). Additionally, reconsideration is appropriate where a court misinterprets or misapplies relevant case law in its original decision. *See*

---

[3] When questioned about the allegations of the complaint in their depositions, Mark and Aliki Gelfman appeared to see no contradiction between the fact that they had never spoken to Touretsky prior to the Tour, and their allegations that he had direct knowledge of Gelfman International's involvement in the Tour.

[4] Essentially the same standard is used to determine Rule 59(e) motions as motions under the Local Rule. Rule 59(e) "does not prescribe specific grounds for granting a motion to alter or amend an otherwise final judgment," *Munafo v. Metropolitan Transp. Authority*, 381 F.3d 99, 105 (2d Cir. 2004), and "district courts may alter or amend a judgment to correct a clear error of law or prevent manifest injustice." *Id.* (internal citations and quotations omitted); *see also Wood v. F.B.I.*, 432 F.3d 78, 85 n.4 (2d Cir. 2005) (affirming denial of Rule 59(e) motion where "district court did not commit error or a manifest injustice"). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

*O'Brien v. Bd. of Educ. of Deer Park Union Free School Dist.*, 127 F. Supp. 2d 342, 346 (E.D.N.Y. 2001).

The standard for success on a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *Pereira v. Aetna Cas. and Sur. Co. (In re Payroll Express Corp.)*, 921 F.Supp. 1121, 1123 (S.D.N.Y. 1996); *Violette v. Armonk Assocs., L.P.*, 823 F. Supp. 224, 226 (S.D.N.Y. 1993). Local Rule 6.3 "is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court." *Ades v. Deloitte & Touche*, 843 F. Supp. 888, 890 (S.D.N.Y. 1994). A Local Rule 6.3 motion is not to be used as a substitute for appeal. *See Morser v. A.T. & T. Information Systems*, 715 F. Supp. 516, 517 (S.D.N.Y. 1989); *Korwek v. Hunt*, 649 F. Supp. 1547, 1548 (S.D.N.Y. 1986). In its motion for reconsideration, a party may not "advance new facts, issues, or arguments not previously presented to the Court." *National Union Fire Ins. Co. v. Stroh Cos*., 265 F.3d 97, 115 (2d Cir. 2001) (quotation omitted). The decision to grant or deny a motion for reargument is within the sound discretion of the Court. *See Devlin v. Transp. Comm'ns Union*, 175 F.3d 121, 132 (2d

Cir. 1999).

## II. Rule 11

Rules 11(b) and 11(c) of the Federal Rules of Civil Procedure provide, in relevant part, as follows:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> ....
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;
> ....
> (c) Sanctions.
> (1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

Fed. R. Civ. P. 11.

"A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification, or reversal of existing law."

*Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002). Rule 11 "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998) (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir. 1985)).[5] Hence, "the standard for triggering the award of fees under Rule 11 is objective unreasonableness, and is not based on the subjective beliefs of the person making the statement." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003) (internal quotation and citation omitted).[6] "Simply put, subjective good faith no longer provides the safe harbor that it once did, before Rule 11 was amended." *Eastway Const. Corp.*, 762 F.2d at 253.

"In assessing whether Rule 11 sanctions should be imposed, the court does not judge the merits of an action." *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 417 (S.D.N.Y. 2003) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)). Rather, in performing a Rule 11 analysis, the court determines "a collateral issue:

---

[5] "It is not permissible to file suit and use discovery as the sole means of finding out whether you have a case. Discovery fills in the details, but you must have the outline of a claim at the beginning." *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987).

[6] In contrast, when sanctions proceedings are initiated by a court, the standard is one of "bad faith," because the party to be sanctioned does not have an opportunity to withdraw the offending document on notice pursuant to the "safe harbor" provision located in 11 (c)(2). *See In re Pennie & Edmonds LLP.*, 323 F.3d 86, 87 (2d Cir. 2003).

whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Id*. (citing *Cooter*, 496 U.S. at 396). "[W]here strictures of the rule have been transgressed, it is incumbent upon the district court to fashion proper sanctions." *Id*. The imposition of sanctions by the court and the determination of the amount of the sanction is left to the court's discretion. *See Caisse Nationale De Credit Agricole-CNCA v. Valcorp, Inc.*, 28 F.3d 259, 266 (2d Cir. 1994).[7]

Rule 11(c)(2), which sets out the procedure for filing a motion for sanctions, includes a "safe harbor" provision that permits an attorney to avoid being subject to sanctions if he or she withdraws or corrects the disputed claim or paper within 21 days after service "or within another time the court sets." Fed. R. Civ. Pro. 11(c)(2), Advisory Committee Notes to 1993 Amendments to Federal Rules of Civil Procedure; *see also In re Pennie & Edmonds LLP.*, 323 F.3d 86, 88-89 (2d Cir. 2003). The text of Rule 11 does not specify what constitutes the "withdrawal" of a challenged claim. However, the Rules Committee Notes to the 1993 revision make plain that withdrawal need not be a formal one.[8] The few courts in this circuit to address this

---

[7] A Rule 11 decision not final and appealable until the amount of the sanction is fixed by the court. *Pannonia Farms, Inc. v. USA Cable*, 426 F.3d 650, 652-53 (2d Cir. 2005).

[8] "If, during this [21-day] period, the alleged violation is corrected, as by withdrawing (whether formally or informally) some allegation or contention, the motion should not be filed with the court." Advisory Committee's Note (1993).

issue have found that a party may avail itself of the safe harbor provision when it takes a substantial step towards the withdrawal of the claim within the 21-day time limit, even if additional steps remain to be taken under Rule 41. *See Carruthers v. Flaum*, 450 F. Supp. 2d 288, 306 (S.D.N.Y. 2006) (plaintiff's counsel protected by safe harbor when he mailed a stipulation of withdrawal with prejudice and without costs to his opponent within the time period, not withstanding the fact that defendant rejected the stipulation); *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 216 F.R.D. 29, 44 n. 12 (E.D.N.Y. 2003) (claims not withdrawn within 21 days still fell within safe harbor because the parties had negotiated among themselves a longer time for responses and the claims were withdrawn before the motions were to be filed); *Mass. Connection, Inc. v. City of Hartford*, 2005 U.S. Dist. LEXIS 19894, *5-7 (D. Conn. August 31, 2005) (party timely mailed a copy of the motion to withdraw claims to the court and to all parties; however, the motion to withdraw was filed in the wrong courthouse, thereby delaying the official filing date).

**III. Reconsideration**

Plaintiff argues that Rule 11 sanctions should not be imposed on two grounds: counsel's actions were reasonable and counsel should be given the benefit of the "safe harbor" provision contained in Rule 11(c).

Plaintiff maintains that counsel reasonably relied on his clients' sworn statements in drafting and filing the amended complaint, and therefore he should not be subject to sanctions. Plaintiff states that counsel attempted to obtain phone records showing calls between the Gelfmans and Touretsky in order to substantiate the claims, but was unable to do so as they had not been preserved. Plaintiff cites cases discussing the amount of investigation that constitutes a "reasonable inquiry" for the purposes of determining Rule 11 sanctions, arguing that counsel's unsuccessful attempt to retrieve phone records, in combination with conversations with Mark and Aliki Gelfman, was sufficient to constitute reasonable inquiry. Plaintiff did not present this argument and supporting law in its opposition to the Rule 11 motion, and thus it is not properly considered on a motion for reconsideration. *See National Union Fire Ins. Co.*, 265 F.3d at 115. In any event, plaintiff's counsel was present during the depositions at which Mark and Aliki Gelfman made clear that they never had any direct contact with Touretsky. Counsel's failure to withdraw the complaint following these depositions was unreasonable.[9]

---

[9] In a variant on the argument that counsel acted reasonably in relying on the statements of Mark and Aliki Gelfman when filing the Amended Complaint, plaintiff argues that my determination that the Gelfmans should not be sanctioned necessarily requires a conclusion that counsel to the Gelfmans should not be sanctioned. This contention assumes that counsel and the Gelfmans should be held to the same standard of reasonableness. In their deposition testimony, Mark and Aliki Gelfman made clear that they presumed that Touretsky knew of the tour arrangements based on statements by Klioner,

Plaintiff additionally argues that the Klioners acted as Touretsky's booking agent and that plaintiff's counsel did not seek to harass or annoy defendants in any way. These arguments were not presented in plaintiff's opposition to the Rule 11 sanctions motion, and therefore are not proper grounds for reconsideration. Moreover, I rejected the former argument in my opinion granting Touretsky's motion to dismiss the original complaint, in which I stated clearly that plaintiff could not recover on an agency theory alone, but instead was required to present some evidence of direct contact between Gelfman International and Touretsky, which plaintiff has failed to do. Regarding the second point, while harassment of a party may make one liable for Rule 11 sanctions, a finding of harassment is not required in order to impose sanctions. Instead, the question is whether "the attorney has abused the judicial process." *Safe-Strap Co.*, 270 F. Supp. 2d at 417.

Turning to the safe harbor provision of Rule 11, plaintiff argues that counsel should not be sanctioned because he attempted to withdraw and discontinue the action against Touretsky within 21 days after service of defendant's Rule 11 motion. Plaintiff supports the argument with several factual allegations not

---

thus establishing that there was *no direct contact* between the Gelfmans and Touretsky. Unlike the Gelfmans, counsel to plaintiff was obligated to read and understand my 2006 opinion granting the defendants' motion to dismiss, in which I clearly stated that without evidence of direct contact between plaintiff and Touretsky, the claims must fail. Accordingly, there is no inconsistency in the decision to sanction counsel but not plaintiff.

previously presented to the court concerning plaintiff's counsel's efforts to form an agreement with Touretsky's counsel to withdraw claims against Touretsky. Plaintiff did not make this argument in his papers opposing the Rule 11 motion. New facts and arguments are not properly considered on a motion for reconsideration. Moreover, even if they were to be considered, the motion for sanctions would be granted.

In his affidavit accompanying the motion for Rule 11 sanctions, Touretsky's counsel stated that although plaintiff's counsel stated that plaintiff was considering withdrawing the claim, he did not do so. Sondhi Aff. at ¶ 3. On January 6, 2009, Touretsky's counsel sent a copy of the motion for sanctions to plaintiff's counsel. *Id*. On January 29, 2009, Touretsky's counsel sent plaintiff's counsel an email stating that a stipulation of discontinuance with prejudice and a general release should be filed by February 2, 2009, or else he would file the motion for Rule 11 sanctions.[10] *Id*. On January 30, 2009, counsel to Touretsky again contacted counsel to plaintiff, who stated that he would require a mutual general release as a condition of dismissal; Touretsky's counsel stated that he would not agree to such a condition. *Id*. When the matter was not withdrawn on February 2, Touretsky's counsel filed the motion.

In its unsworn memorandum of law seeking reconsideration,

---

[10]Touretsky's counsel attached a copy of this email to his affidavit.

plaintiff offers a new and different account of the discussions surrounding the withdrawal of the complaint against Touretsky. Counsel states that in January 2009, plaintiff's counsel contacted Touretsky's counsel to discuss dismissal of the action with an exchange of general releases.[11] Pl. Mem. at 12. The attorneys agreed in principle to a settlement, which was memorialized in an email of January 30, 2009.[12] *Id*. Plaintiff's counsel attempted to finalize the dismissal, but Touretsky's counsel indicated he was waiting for confirmation from his client, who resided in Russia, who thereafter stated that he would not agree to general releases. *Id*. Plaintiff's counsel informed Touretsky's counsel that plaintiff would provide a stipulation of discontinuance without a waiver. *Id*. Touretsky's counsel indicated that he needed to speak with his client again, after which Touretsky filed his motion for Rule 11. *Id.* Shortly thereafter, Touretsky's counsel informed plaintiff's counsel that Touretsky would not agree to withdraw the Rule 11 motion even if plaintiff did agree to dismiss the action. *Id*. at 13.[13]

Even if it were admissible and taken as true, the new

---

[11] Plaintiff's counsel does not explain what was meant by the term "general releases."

[12] Plaintiff does not attach a copy of the email.

[13] Plaintiff's counsel additionally refers to discussions that took place before the magistrate in 2007 regarding withdrawal of the action against Touretsky and the decision not to take Touretsky's deposition. These actions have no bearing on the application of the Rule 11 safe harbor provision.

evidence presented by plaintiff's counsel in his unsworn memorandum does not establish counsel's right to the safe harbor protections of Rule 11. The record makes clear that counsel did not withdraw the amended complaint within the 21-day time limit. Plaintiff's suggestion that Touretsky was somehow at fault for failing to come to a timely agreement regarding the terms of the dismissal of the complaint is without merit. Rule 11 prohibits the filing of motions unfounded in fact; plaintiff's counsel was not at liberty to refuse to withdraw plaintiff's baseless claims against Touretsky pending a settlement agreement. Nor did plaintiff's counsel inform the court of difficulties in resolving the dispute and seek additional time to effect the withdrawal of the allegations by Touretsky, as is permitted by Rule 11(c)(2). Indeed, after the last-minute message from plaintiff's counsel to Touretsky's counsel stating that he would provide a stipulation of discontinuance without a waiver, plaintiff took no further action to effect the withdrawal of claims against Touretsky. Accordingly, because counsel failed to take a substantial step to withdraw the claims against Touretsky, he is ineligible for the safe harbor provision.

## CONCLUSION

For the reasons stated herein, the motion for reconsideration by plaintiff is denied. The Clerk is directed to

transmit a copy of the within to all parties and the assigned Magistrate Judge.

SO ORDERED.

Dated: Brooklyn, New York
September 9, 2009

By: <ins>/s/ Charles P. Sifton (electronically signed)</ins>
United States District Judge